*Williams v. Menard,* No. 605-10-17 Wncv (Teachout, J., Jan. 16, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION
Docket No. 605-10-17 Wncv

ERIC WILLIAMS
  Plaintiff

  v.

LISA MENARD, COMMISSIONER,
VERMONT DEPARTMENT OF CORRECTIONS
  Defendant

## DECISION
### Cross Motions for Summary Judgment

Eric Williams, an inmate in the custody of the Commissioner of the Department of Corrections, made a public records request to the Vermont Department of Corrections seeking copies of e-mails about him that were generated during an investigation of a suspected sexual encounter between him and a staff person at the Michigan facility where he then resided. The DOC denied his request administratively and he has sought review here. The State has filed a motion for summary judgment arguing that the records are "inmate records" under 28 V.S.A. § 107, that inmate records are confidential, and that no exceptions apply. Mr. Williams responded with a cross motion for summary judgment.

In 2016, the legislature adopted a new regime controlling access to offender and inmate records. 28 V.S.A. § 107; 2015, No. 137 (Adj. Sess.), § 5. It continues the prior general rule of confidentiality, see 28 V.S.A. § 601(10) (before May 25, 2016), but includes 5 exceptions at 28 V.S.A. § 701(b). Exception 1 applies if inspection is required by state or federal law. Exception 2 applies if good cause for access is shown or the rules of discovery require access. Exception 3 applies in circumstances of a criminal investigation. Exception 4 applies to agency needs for access for child protection purposes.

The parties focus largely on Exception 2, the good cause exception. However, there has been no showing of good cause. Mr. Williams, understandably, is curious to see the e-mails. However, there is no showing that any injustice will occur if he does not have access to the e-mails. Similarly, there is no basis for obtaining the records because they are needed in a lawsuit and available under the rules of discovery.

The State mentions Exception 5 only briefly and only to say that the DOC has not yet adopted rules to implement it. Exception 5 is a sweeping new right of access allowing inmates to access their own "inmate records." Mr. Williams' request falls squarely within Exception 5.

In pertinent part, Exception 5 reads as follows:

(b) Offender and inmate records maintained by the Department are exempt from public inspection and copying under the Public Records Act and shall be kept confidential, except that the Department:

.   .   .

(5) Shall release or permit inspection of designated offender and inmate records to specific persons, or to any person, in accordance with rules that the Commissioner shall adopt pursuant to 3 V.S.A. chapter 25, provided that the Commissioner shall redact any information that may compromise the safety of any person prior to releasing or permitting inspection of such records under the rules. *The Commissioner shall authorize release or inspection of offender and inmate records under these rules*:

.   .   .

(B) *To provide an offender or inmate access to records relating to him or her if access is not otherwise guaranteed under this subsection, unless providing such access would reveal information that is confidential or exempt from disclosure under a law other than this section, would unreasonably interfere with the Department's ability to perform its functions, or may compromise the health, safety, security, or rehabilitation of the offender or inmate or of another person.* The rules may specify circumstances under which the Department may limit the number of requests that will be fulfilled per calendar year, as long as the Department fulfills at least one request per calendar year excluding any release of records ordered by a court, and at least one additional request in the same calendar year limited to records not in existence at the time of the original request or not within the scope of the original request. The rules also may specify circumstances when the offender's or inmate's right of access will be limited to an inspection overseen by an agent or employee of the Department. The rules shall reflect the Department's obligation not to withhold a record in its entirety on the basis that it contains some confidential or exempt content, to redact such content, and to make the redacted record available.

28 V.S.A. § 107(b)(5)(B) (emphasis added).

The Act by which § 107 was adopted included this:

Sec. 7.  EFFECTIVE DATE; TRANSITION PROVISION

(a) *This act shall take effect on passage.*

2

(b) Except as provided in subsection (c) of this section, the Commissioner of Corrections may only release or permit inspection of offender or inmate records in reliance upon an exception to the confidentiality of offender and inmate records if the exception is created by law, including an exception created by rule adopted in accordance with the Administrative Procedure Act under the mandate in Sec. 5, 28 V.S.A. § 107(b)(5).

(c) The Department of Corrections may rely upon exceptions to the confidentiality of offender and inmate files under directives adopted by the Department prior to the effective date of this act until the Commissioner adopts rules pursuant to the rulemaking mandates of Sec. 5, 28 V.S.A. § 107(a) and (b)(5). On or before September 1, 2016, the Commissioner shall prefile rules with the Interagency Committee on Administrative Rules in accordance with these mandates. The Commissioner shall update the Joint Legislative Justice Oversight Committee on the status of its efforts to adopt the rules at the Oversight Committee's first meeting on or after September 1, 2016.

2015, No. 137 (Adj. Sess.), § 7 (emphasis added).

The DOC attempted to comply with these rulemaking requirements. It eventually proposed a final, revised rule but the legislature quickly rejected it. The legislature then amended 2015, No. 137 (Adj. Sess.), § 7 by adding several additional subsections, as follows:

(d)(1) On August 30, 2016, to implement the rulemaking requirements of 28 V.S.A. § 107, the Commissioner prefiled a proposed rule entitled "inmate/offender records and access to information" with the Interagency Committee on Administrative Rules. The Commissioner filed the proposed rule, as corrected, with the Secretary of State on October 13, 2016 and the final proposed rule, as revised, with the Legislative Committee on Administrative Rules (LCAR) on January 31, 2017. After reviewing and receiving testimony on the final proposed rule, as revised, the House Committee on Corrections and Institutions found that it was not consistent with legislative intent because the rule would potentially cause significant costs and disruptions to the Department.
  (2) The Commissioner shall:
    (A) withdraw the proposed final rule filed with LCAR on January 31, 2017; and
    (B) redraft the proposed rule so that it reflects legislative intent as described in subsection (e) of this section.
  (3) The Department of Corrections may continue to rely upon exceptions to the confidentiality of offender and inmate files under directives adopted by the Department prior to May 26, 2016 until the Commissioner adopts final rules as required under 28 V.S.A. § 107.

(e) The General Assembly intends that, in either of the following situations, 28 V.S.A. § 107 shall be interpreted not to require the Department to provide an

3

inmate or offender a copy of records:

    (1)  Previously provided by the Department to the inmate or offender, if the inmate or offender has custody of or the right to access the copy.

    (2)  If the inmate or offender is responsible for the loss or destruction of a previously provided copy.  In the case of such loss or destruction, the inmate or offender may—subject to the limitations of 28 V.S.A. § 107—be entitled to a replacement copy, but the Department may charge him or her for the replacement copy in accordance with law.

(f)  On or before October 1, 2017, the Commissioner shall:

    (1)  develop a plan to implement and use modern records management technology and practices in order to minimize the costs of reviewing, redacting, and furnishing such records in accordance with law; and

    (2)  send to the members of the House Committee on Corrections and Institutions and of the Senate Committee on Institutions a copy of the plan required under subdivision (1) of this subsection, and a written report that:

        (A)  summarizes the status of the Department's efforts to redraft the rules as required under subsection (d) of this section; and

        (B)  outlines the implementation steps, expected benefits and costs to the State of Vermont, and time line associated with transitioning to digital delivery of inmate and offender records.

(g)  On or before January 15, 2018, the Commissioner shall submit a copy of the redrafted rules to the House Committee on Corrections and Institutions and to the Senate Committee on Institutions.  On or before July 1, 2018, the Commissioner shall prefile the redrafted rules, as may be revised, with the Interagency Committee on Administrative Rules.

2017, No. 78, § 10.

      According to the DOC's Public Records Officer, the DOC has not yet submitted "the redrafted proposed rule for the implementation of exception (5) contained in 28 V.S.A. § 107(b) to either the House Committee on Corrections and Institutions, to the Senate Committee on Institutions or prefiled with the Interagency Committee on Administrative Rules."  Affidavit of David Turner ¶ 12 (filed Nov. 22, 2017).  It is unclear whether the DOC, subsequent to Mr. Turner's affidavit, met the January 15, 2018, deadline for filing with the House Committee on Corrections and Institutions and to the Senate Committee on Institutions.  See generally 3 V.S.A. § 846(d) (empowering the court to "fashion appropriate relief" for violations of the Administrative Procedures Act).

      The State's failure to address the substance of Exception 5 but to note that the DOC has not yet adopted rules to implement it presumably reflects a view that Exception 5 has no effect until the DOC's rulemaking is successfully promulgated.

      Without any such rulemaking, Exception 5 already includes a clear right allowing inmates to access their own records and a sufficiently precise standard that limits that right: "unless providing such access would reveal information that is confidential or exempt from

4

disclosure under a law other than this section, would unreasonably interfere with the Department's ability to perform its functions, or may compromise the health, safety, security, or rehabilitation of the offender or inmate or of another person." 28 V.S.A. § 107(b)(5)(B). Nothing in § 107 suggests that the DOC may ignore this new right of access to inmate records until it successfully promulgates new rules, and 2015, No. 137 (Adj. Sess.), § 7(a) specifically states that "[t]his act shall take effect on passage." The court does not see anything in 2015, No. 137 (Adj. Sess.), § 7 or 2017, No. 78, § 10 to change that. See, e.g., *Union Twist Drill Co. v. Harvey*, 113 Vt. 493, 503 (1944) (legislature's anticipation of rules implementing a statute does not necessarily "indicate a legislative intention that this shall be done before the time" the statute otherwise becomes effective).

Moreover, 28 V.S.A. § 107(b)(5)(B) suggests the nature of the rules to be developed: limiting the frequency of requests; designating circumstances for oversight of inspection; and redaction rather than denial of records containing some confidential material. As these examples show, rules would not, and could not, undermine the plain meaning of the statute that an inmate is entitled to access to his or her records within the statutory terms. Thus, the fact that rules have not yet been promulgated is not a basis for denial of the enforceability of Exception 5. This is particular so given the general policy of transparency of government and access to government records except for specified exemptions. 3 V.S.A. § 315(a).

The State has asserted no basis cognizable under 28 V.S.A. § 107(b)(5)(B) for denying Mr. Williams' records request.

ORDER

For the foregoing reasons, the State's motion for summary judgment is *denied*, and Petitioner's cross motion for summary judgment is *granted*.

The State shall provide the records to Mr. Williams by March 19, 2018.

Dated at Montpelier, Vermont this _____ day of February 2018.

_____
Mary Miles Teachout
Superior Judge

5